UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MUKHTAR SOU,

               Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of the Social Security Administration,

               Defendant.

CASE NO. 3:18-cv-05165-RSM-DWC

REPORT AND RECOMMENDATION

NOTED FOR: AUGUST 24, 2018

The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff filed this matter seeking judicial review of Defendant's denial of his application for disability insurance benefits ("DIB").

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") did not error in her consideration of Plaintiff's subjective symptom testimony. Therefore, the undersigned recommends this matter be affirmed pursuant to sentence four of 42 U.S.C. § 405(g). The undersigned also recommends judgment be entered for Defendant and the case be closed.

REPORT AND RECOMMENDATION - 1

| | |
|---|---|
| 1 | FACTUAL AND PROCEDURAL HISTORY |
| 2 | In February 2015, Plaintiff filed an application for DIB, alleging disability as of May 14, |
| 3 | 2014 ("original alleged onset date"). *See* Dkt. 8, Administrative Record ("AR") 174-75. The |
| 4 | application was denied upon initial administrative review and on reconsideration. *See* AR 79- |
| 5 | 100, 104-110. A hearing was held before ALJ Kelly Wilson on December 12, 2016. *See* AR 27- |
| 6 | 78. In a decision dated January 28, 2017, the ALJ determined Plaintiff to be not disabled. *See* AR |
| 7 | 11-26. After the ALJ issued her decision, Plaintiff amended his alleged onset date of disability to |
| 8 | July 1, 2015 ("amended alleged onset date"). AR 173. Plaintiff's request for review of the ALJ's |
| 9 | decision was denied by the Appeals Council, making the ALJ's decision the final decision of the |
| 10 | Commissioner. *See* AR 1-7; 20 C.F.R. § 404.981, § 416.1481. |
| 11 | In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) improperly |
| 12 | evaluating Plaintiff's subjective symptom testimony; (2) improperly evaluating Plaintiff's |
| 13 | residual functional capacity ("RFC") and the step five finding. Dkt. 10 at 2-10. Plaintiff seeks |
| 14 | remand for an award of benefits, or in the alternative, remand for further administrative |
| 15 | proceedings. Dkt. 10 at 10-12. |
| 16 | STANDARD OF REVIEW |
| 17 | Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of |
| 18 | social security benefits if the ALJ's findings are based on legal error or not supported by |
| 19 | substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th |
| 20 | Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). |
| 21 | DISCUSSION |
| 22 | **I.     Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony.** |
| 23 | |
| 24 | |

1    Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons for
2 rejecting Plaintiff's testimony. Dkt. 10 at 3-8.
3    To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent
4 reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).
5 The ALJ "must identify what testimony is not credible and what evidence undermines the
6 claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless
7 affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the
8 claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. Questions of
9 credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th
10 Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*,
11 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility
12 determination where the determination is based on contradictory or ambiguous evidence. *Id.* at
13 579.[1]
14    At the hearing, Plaintiff testified he is unable to work because of problems with his left
15 and right knees, back, shoulder, and trigger fingers. AR 36-38. Plaintiff testified both knees are
16 painful, but the right knee is more painful. AR 37. Plaintiff testified he had left knee replacement
17 surgery, and his left knee is weak. AR 36-37. Plaintiff testified his right knee swells. AR 37.
18 Plaintiff testified he has back pain on his right side which goes all the way to his leg. AR 38.
19 Plaintiff testified he can stand about 15 to 20 minutes, then he has to sit down. AR 41. Plaintiff

---

[1] On March 28, 2016, the Social Security Administration changed the way it analyzes a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016). The term "credibility" will no longer be used. 2016 WL 1119029, at *1. Further, symptom evaluation is no longer an examination of a claimant's character. *See id.* at *10 ("adjudicators will not assess an individual's overall character or truthfulness"). The ALJ's decision here – dated January 2017 – was issued after SSR 16-3p became effective. However, the applicable Ninth Circuit case law still refers to the term "credibility." Thus, at this time, the Court will use "credibility" and "subjective symptom testimony" interchangeably.

testified when he sits down, he moves around. AR 41. Plaintiff testified he can sit for an hour, but needs to shift positions every 10 minutes. AR 57. Plaintiff testified he uses a cane when he leaves the house, and it helps to keep him keep stable, hold his balance, walk better and relieve pain. AR 42.

Plaintiff testified his knee pain is at a five and his back pain is at a six or seven on a scale of zero to ten. AR 43 (zero is no pain, ten is going to the emergency room because the pain is so bad). Plaintiff testified sometimes the pain is at an eight or nine, about one to two times per week. AR 60. Plaintiff testified his pain affects his ability to concentrate. AR 58.

Plaintiff testified he cares for his two-year-old son approximately 25 to 30 hours per week while his wife is working. AR 44, 48. Plaintiff testified he can do the dishes, laundry and sweep the floor. AR 46. Plaintiff testified he does not do any "outside" chores. AR 47. Plaintiff testified his wife makes dinner, and they both go shopping. AR 48. Plaintiff testified he can do the laundry for 10 to 15 minutes before taking a break. AR 53. When he takes a break, Plaintiff testified he needs about 10 to 15 minutes to sit down. AR 53. Plaintiff testified he can drive for 10 to 15 minutes at a time. AR 54.

The ALJ found Plaintiff's allegations were inconsistent with the medical evidence and other evidence in the record. AR 19. Specifically, the ALJ found: (A) Plaintiff's knee and back pain are managed conservatively and improved with treatment; (B) Plaintiff worked after the original alleged onset date; (C) Plaintiff's testimony is inconsistent with his prior statements; (D) Plaintiff's allegations are inconsistent with his daily activities; and (E) Plaintiff received unemployment benefits after the original alleged onset date. AR 18-21.

The Court concludes not all of the reasons the ALJ provided for discounting Plaintiff's subjective symptom testimony were proper. Nevertheless, the fact that some of the reasons for

doing so were not proper does not render the ALJ's credibility determination invalid, as long as the determination is supported by substantial evidence in the record overall, as it is in this case for the other proper reasons the ALJ gave. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).

A. <u>Course of Treatment</u>

The ALJ summarized Plaintiff's treatment history related to his left knee, right knee and back pain. AR 19-20. The ALJ found Plaintiff's testimony was inconsistent with evidence indicating he "responded well to surgery on the left knee and routine treatment thereafter for his left and right knees and low back pain." AR 19-20.

An ALJ may consider "evidence of 'conservative treatment'" in assessing a claimant's subjective symptom testimony. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting an ALJ may consider whether treatment produced a fair response or control of pain which was satisfactory). However, a conservative approach to treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Commissioner,* 533 F.3d 1155, 1162 (9th Cir. 2008); *Fair v Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) ("While there are any number of good reasons for not [following a prescribed course of treatment], ... a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.") (internal citation omitted).

As an initial matter, the Court notes Plaintiff does not challenge the ALJ's finding Plaintiff's left knee improved after surgery and Plaintiff's back pain improved with physical therapy, and only argues the ALJ erred by rejecting Plaintiff's testimony because Plaintiff had not yet undergone right knee surgery. Dkt. 10 at 3-8;[2] AR 19-20. As Plaintiff does not challenge these reasons for discrediting his testimony, he has waived the argument. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1226, n. 7 (finding an argument not raised in the plaintiff's opening brief was deemed waived). Moreover, the ALJ's finding is supported by substantial evidence establishing Plaintiff's left knee improved after his May 2014 knee replacement surgery. AR 293 (left knee pain improved with replacement), 296 (left knee surgery scheduled for May 13, 2014). 316 (Plaintiff reported Ibuprofen has been "quite helpful for the swelling and pain."); 924 (Plaintiff reported left knee was not painful). In one post-surgery treatment note dated July 2015 Plaintiff did report pain in his left knee, but it appears this pain was related to Plaintiff falling and twisting his foot, and not indicative of Plaintiff's general symptoms post-surgery. AR 349-350 (Plaintiff reported he twisted his foot a few weeks earlier and had left knee pain since that time.). The ALJ's finding Plaintiff's low back pain improved with physical therapy is also supported by substantial evidence. *See* AR 349 (Plaintiff's provider stated his low back pain improved with physical therapy), 906 (physical therapy "helped" low back pain).

The ALJ further reasoned Plaintiff's right knee pain was well-controlled with conservative treatment and Plaintiff had not yet undergone surgery. AR 19-20. Here, the ALJ considered Plaintiff had not received any treatment for his right knee pain other than the use of

---

[2] Although Plaintiff generally argues the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony he needs a cane and cannot stand longer than 15 to 20 minutes, Plaintiff's Opening Brief only addresses the medical evidence discussed by the ALJ related to Plaintiff's right knee surgery. Dkt. 10 at 3-6, 7-8.

1  pain medication, namely Ibuprofen, and injections. AR 19-20 (citing AR 303, 305, 316, 359,
2  361, 924-927). The ALJ also considered Plaintiff declined recommended surgery for his right
3  knee. AR 19-21. Reliance on and response to conservative treatment can be clear and convincing
4  reason to discount his allegations of disabling impairments. *See Tommasetti v. Astrue,* 533 F.3d
5  1035, 1040 (9th Cir. 2008) (holding claimant's response to conservative treatment undermined
6  his reports of disabling symptoms); *Parra,* 481 F.3d at 751 ("evidence of 'conservative
7  treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

8      In this case, however, while there is considerable support in the record for the fact that
9  Ibuprofen and injections alleviated at least some of Plaintiff's right knee pain, the same records
10 indicate a continued pain despite such treatment. *See* AR 303-305, 316, 359, 361, 924-927. The
11 record also reflects Plaintiff's orthopedist recommended right knee surgery, but Plaintiff elected
12 to delay it. AR 316, 818, 888. The ALJ found Plaintiff's choice to delay surgery demonstrated a
13 conservative treatment plan which was inconsistent with disability AR 19-21. However, the ALJ
14 failed to discuss all of the reasons associated with Plaintiff's choice to delay the surgery. *See*
15 *Fair*, 885 F.2d at 602 ("Neither may an ALJ rely on the claimant's failure to take pain
16 medication where evidence suggests the claimant had a good reason for not taking medication.").

17     The ALJ did acknowledge Plaintiff's testimony he delayed surgery because his wife was
18 working and would therefore be unable to care for him and their two-year-old son. AR 21.  The
19 ALJ then reasoned since Plaintiff's older son could have cared for Plaintiff and his two-year-old
20 son after surgery, and the timing of Plaintiff's wife's job was only seasonal, she could have
21 managed to her work schedule to assist during Plaintiff's recovery. AR 21. However, there is no
22 evidence in the record Plaintiff's older son was willing or able to care for his father and two-

year-old brother while Plaintiff recovered from surgery,[3] or the seasonal schedule of Plaintiff's wife's job would have coincided with an opportunity to schedule the surgery.

In addition, the ALJ failed to consider Plaintiff's other reasons for delaying his right knee surgery, which are supported by the record. In June 2015, Plaintiff and his orthopedic surgeon decided to delay the right knee surgery in order to give Plaintiff's left knee more time to heal. AR 316. In October 2015, Plaintiff had surgery on his right foot. AR 818. In February 2016, Plaintiff reported he was waiting for his right foot to heal before having surgery on his knee. AR 818. In July 2016, Plaintiff experienced "residual paresthesias distal to the [left knee]" which caused him to be "nervous about getting his right knee replaced[.]" AR 888.

Accordingly, the Court concludes the ALJ's finding Plaintiff's right knee responded well to conservative treatment is not supported by substantial evidence, and the ALJ erred.

B.  Work History

The ALJ found Plaintiff worked after his alleged onset date and the earnings were well over the substantial gainful activity, which "suggests a significant ability to work at a lower exertional level capacity, especially since the claimant's past work was at least medium." AR 20 (citing AR 188). In addition, at step two, the ALJ noted several inconsistencies between Plaintiff's testimony and his work history. AR 16.

In his DIB application, Plaintiff alleged the onset date of his disability was May 14, 2014. AR 174. In a disability report prepared at the field office in March 2015, Plaintiff's potential disability onset date was estimated to be March 7, 2015, in light of his work and substantial gainful activity after May 14, 2014. AR 211. However, there is no indication in the record the

---

[3] Plaintiff testified his 18-year-old son lives with him, is in college, and helps "move stuff" around the house. AR 44, 63.

Administration actually changed Plaintiff's alleged onset date of disability to March 7, 2015. *See* AR 14, 211. In her opinion, the ALJ noted Plaintiff alleged disability beginning May 14, 2014 and made no mention of the potential disability onset date of March 7, 2015. AR 14. On March 8, 2017, after the December 2016 hearing and after the ALJ issued her January 2017 opinion, Plaintiff amended his alleged onset date from May 14, 2014 to July 1, 2015. AR 173.

Here, Plaintiff did not amend his alleged onset date until *after* the hearing and *after* the ALJ issued her decision. AR. 11-26, 27-78, 173. Although Plaintiff argues the ALJ's conclusion is moot because he amended his alleged onset date, Dkt. 10 at 2, what affects Plaintiff's credibility here is the fact that at the time of the hearing and the ALJ's decision, Plaintiff's work history was inconsistent with his allegation he was disabled as of May 2014. In fact, based on the timing of the amendment, it appears Plaintiff only amended his disability onset date after learning Social Security regulations precluded a finding of disability from 2014 to 2015 due to his substantial gainful activity. AR 173. Thus, at the time of the hearing and the ALJ's decision, the ALJ appropriately considered and reasonably weighed Plaintiff's testimony against his work history in 2014 and 2015. In any event, to the extent Plaintiff's work history is ambiguous or can be interpreted in more than one rational way based on the amended alleged onset date, the Court may not reverse the ALJ's credibility determination. *See Allen,* 749 F.2d at 579 (if evidence admits of more than one rational interpretation, ALJ's decision must be upheld; court may not reverse ALJ's credibility determination where it is based on contradictory or ambiguous evidence).

Moreover, at step two, the ALJ found Plaintiff's work history between 2014 and 2015 was inconsistent with his testimony, which is supported by the record. AR 16; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (An ALJ may consider prior inconsistent statements

1  concerning symptoms and "other testimony by [plaintiff] that appears less than candid in weighing
2  plaintiff's credibility."). In 2014 and 2015, Plaintiff testified he worked stacking plants and
3  shrubs. AR 33-34, 182. Plaintiff testified he stopped working with at the end of 2014 to have left
4  knee surgery, which is inconsistent with the treatment records which reflect he had surgery in
5  May 2014. AR 33-34, 293, 305, 316. Second, Plaintiff testified there was a gap of three to four
6  months before he returned to work in 2015, but the earning records indicate earnings in the first
7  quarter of 2015. AR 33-35, 188. These inconsistencies are not disputed by Plaintiff who
8  acknowledges in his Opening Brief he was out of work for three months from May to August
9  2014 for left knee replacement surgery, returned to work for six months, and had to stop working
10 due to his impairments on March 7, 2015. Dkt. 10 at 2.

11      Accordingly, the Court concludes Plaintiff's work history between 2014 and 2015 and
12 Plaintiff's inconsistent testimony is a clear and convincing reason to discredit Plaintiff's
13 subjective symptom testimony.

14      C.  Inconsistent Statement

15      The ALJ discounted Plaintiff's subjective symptom testimony because Plaintiff made
16 inconsistent statements regarding his limitations. AR 20. An ALJ may consider prior inconsistent
17 statements concerning symptoms and "other testimony by [plaintiff] that appears less than candid
18 in weighing plaintiff's credibility." *Tommasetti*, 533 F.3d at 1039. To the extent the ALJ relied on
19 inconsistencies related to Plaintiff's decision to delay in right knee surgery and his family's ability
20 to help care for him and his two-year-old son, this has already been addressed above, *see*
21 subsection A.

22      The ALJ noted in October 2016 Plaintiff felt he was finally "approaching disability"
23 regarding his right knee. AR 20 (citing AR 906). However, the same treatment note reflects
24

Plaintiff reported he had not been able to work for "about a year" because of his orthopedic problems. AR 907. Thus, it is not entirely clear from the record how Plaintiff's statement he was "approaching disability" is materially inconsistent with an ability to work. Moreover, one single record cite wherein Plaintiff reported he was "approaching disability" is not sufficient to show Plaintiff's allegations regarding his limitations as of the original or amended alleged onset date are incredible. The ALJ did not cite to any other evidence in the record, and the Court is not aware of any, indicating Plaintiff did not believe he was disabled until October 2016. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (finding an ALJ must not "cherry-pick" certain observations without considering their context); *Garrison v. Colvin,* 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard.") (emphasis original).

Accordingly, the Court finds the ALJ's decision to discount Plaintiff's subjective symptom testimony because Plaintiff made allegedly inconsistent statements throughout the record is not clear and convincing or supported by substantial evidence.

### D.  Daily Activities

The ALJ determined Plaintiff's activities of daily living illustrate Plaintiff's functional limitations are not as limiting as he has alleged. AR 20. The Ninth Circuit has recognized two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony and (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ first found Plaintiff's daily activities indicate he meets the threshold for transferable work skills. *See* AR 20. The ALJ concluded Plaintiff's ability to care for his two-year-old son by himself for 25 to 30 hours per week weighs against Plaintiff's testimony he is unable to sustain work on a regular and continuing basis. AR 20. The ALJ reasoned taking care of a young child is "very exertional work" defined as a medium, unskilled job. AR 20 (citing DOT 301.677-010). The ALJ noted even if Plaintiff was not performing the exertional activities of lifting and carrying up to 50 pounds occasionally and 25 pounds frequently,

> being the caretaker of a preschool aged child is a physical and mentally demanding endeavor, during the waking hours of the child, with figurative "on-call" responsibilities throughout each night. The fact that the claimant is able to sustain these responsibilities on a daily, weekly, and monthly basis, weighs strongly against the allegation he is unable to sustain remunerative work activity on a regular and continuing basis.

AR 20.

However, many home activities are not easily transferable to a work environment, "where it might be impossible to periodically rest or take medication.'" *Trevizo v. Berryhill*, 871 F.3d at 871 F.3d 664, 682 (9th Cir. 2017). The Ninth Circuit in *Trevizo* found the ALJ could not rely on a claimant's childcare responsibilities as substantial evidence of non-disability without "specific details" regarding the scope of responsibilities. *Id.* at 676. The same reasoning applies to Plaintiff. Plaintiff testified he watches his two-year-old son 25 to 30 hours per week while his wife is working at a seasonal job, but he cannot carry his two-year-old, they stay in the house "all the time[,]" and his son sleeps two to three hours per day. AR 44-47. This testimony is not sufficient to show Plaintiff could work as a full-time child care work. Here, as in *Trevizo,* the ALJ's decision generalized evidence Plaintiff performs some childcare activities 25 to 30 hours per week to find Plaintiff could perform *all* of the childcare functions required and extended her reasoning by analogizing Plaintiff's role to that of a full-time child care work. AR 20; *See*

*Trevizo,* 871 F.3d at 682. However, when the facts are interpreted in a reasonable way, the record does not indicate Plaintiff's childcare activities negated his claimed limitations from back, shoulder and knee pain.

The Court concludes Plaintiff's ability to care for his son does not show Plaintiff meets the threshold for transferable work skills. Therefore, the ALJ's finding Plaintiff's ability to care for his two-year-old son show he is capable of performing light work is not a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

Next, the ALJ cited to Plaintiff's ability to do household chores, shop with his wife, drive, handle personal care without assistance, and travel to Cambodia are inconsistent with the disabling levels of pain and other symptoms alleged by Plaintiff, and suggest a level of functioning greater than what Plaintiff has alleged. AR 20.

However, the record does not support this conclusion. Plaintiff's testimony indicates his activities of daily living are more limited than noted by the ALJ. For example, Plaintiff testified he does not do any chores outside of the house such as mowing and yardwork. AR 47, 59. Plaintiff testified he can do the laundry for 10 to 15 minutes before needing a break for 10 to 15 minutes. AR 52-53. Plaintiff testified he can only drive for 10 to 15 minutes at a time. AR 54. Plaintiff testified his wife helps him clean, and does "all the housework." AR 59.

The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, ... does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 603); *see Reddick*, 157 F.3d at 722. The ALJ did not cite to specific evidence demonstrating Plaintiff drives, shops, or does any other activity on a daily basis. *See*

AR 26. Thus, the evidence fails to reveal Plaintiff spends a substantial part of his day performing any of these activities or the level at which he performed them is inconsistent with his other testimony.

With respect to Plaintiff's plane trip to Cambodia, AR 20, the evidence shows Plaintiff did so on one occasion. AR 20, 51. There is no evidence in the record Plaintiff did so on a regular basis, and Plaintiff testified he was able to sleep, sit, and stand during the flight. AR 51. There is no evidence he could travel internationally or perform other similar activities as a part of a job requirement. The ALJ's decision cannot be affirmed "simply by isolating a specific quantum of supporting evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) (internal quotation marks and citations omitted).

To the extent the ALJ relied on Plaintiff's ability to watch TV, finding it was inconsistent with any cognition problems, AR 21, Plaintiff testified his pain interferes with his concentration. AR 36, 41, 55. However, there is no evidence in the record Plaintiff is experiencing pain while watching TV. *See id.* Moreover, the mere fact watched TV, absent additional detail regarding his ability to watch TV and concentration is not a clear and convincing reason to discount Plaintiff's testimony. *See Trevizo,* 871 F.3d at 664.

Thus, the evidence fails to reveal Plaintiff spends a substantial part of his day performing any of these activities or the level at which he performed them is inconsistent with his other testimony. Therefore, the ALJ's finding Plaintiff's daily activities show he is capable of performing light work is not a clear and convincing reason to discount Plaintiff's subjective symptom testimony. *See Reddick*, 157 F.3d at 722 (recognizing "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Nor would the record support findings Plaintiff's activities are transferable to a work setting and Plaintiff

spends a "substantial part of [his] day" on them, even if the ALJ had made such findings. *See Smolen*, 80 F.3d at 1284 & n.7.

E. Unemployment

The ALJ found Plaintiff's receipt of unemployment benefits in the first, second, and third quarters of 2015 is inconsistent with his testimony, because unemployment benefits "typically require[] one to certify that he is ready, willing, and able to work, which conflicts with filing for disability and having an earlier alleged on set date, which is the case here." AR 20-21.[4]

The Court is mindful a claimant's receipt of unemployment benefits could be a legally sufficient reason to find a plaintiff not credible if it evidenced the plaintiff considered himself capable of work and held himself out as available for work. *See Copeland v. Bowen,* 861 F.2d 536, 542 (9th Cir. 1988). However, a plaintiff's receipt of unemployment benefits does not necessarily constitute a legally sufficient reason for an adverse credibility determination when the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work." *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008); *Mulanax v. Comm'r of Soc. Sec. Admin.,* 293 Fed. Appx. 522, 523 (9th Cir. 2008) (receipt of unemployment benefits which were payable to applicants available for temporary or part-time jobs was not necessarily inconsistent with a claim of disability under the Social Security Act).

Here, although the record does contain evidence Plaintiff received unemployment benefits in 2015, AR 173, 182, the record does not provide any context for that evidence. The

---

[4] To the extent Plaintiff argues he amended his alleged onset date to July 1, 2015, and has not received any income or unemployment benefits since then, Plaintiff did not amend his alleged onset date until after the ALJ issued her decision. AR 173. Therefore, as discussed above, ALJ properly considered the earlier alleged on set date when she rendered her opinion. AR 20-21.

1  record does not contain Plaintiff's unemployment benefits application, does not specify whether
2  Plaintiff claimed he was available for full-time or part-time work, and does not otherwise specify
3  the basis for any application for unemployment benefits. *See* AR 173, 182. Accordingly, the
4  Court finds the evidence in the record Plaintiff received unemployment benefits in 2015 does not
5  give rise to a legally sufficient reason on which the ALJ could properly rely in support of his
6  adverse credibility determination. *See, e.g., Plummer v. Colvin,* 2014 WL 7150682, at *16 (D.
7  Az. Dec. 16, 2014) (claimant's receipt of unemployment benefits was not clear and convincing
8  reason for ALJ's adverse credibility determination where the record did not contain the
9  unemployment benefits application nor establish the manner in which claimant held herself out
10 as available for work in completing any such application); *Wood v. Colvin,* 2014 WL 4407719, at
11 *9 (E.D. Wash. Sept. 8, 2014) (same where record contained no certification by claimant he was
12 physically and mentally able to work full-time).

13     F.   Objective Evidence

14         Plaintiff argues the ALJ also found the objective evidence was inconsistent with
15 Plaintiff's testimony. Dkt. 10 at 7-9 (citing AR 21). However, in finding Plaintiff's testimony
16 was inconsistent with the objective evidence, the ALJ continually noted Plaintiff's delay in
17 having right knee surgery, and Plaintiff's symptoms were managed conservative with
18 medication, left knee surgery, and physical therapy. AR 19-20. Thus, the Court concludes the
19 ALJ's statement Plaintiff's symptoms were unreliable in light of "mild objective clinical
20 findings[,]" AR 21, does not form an independent basis on which the ALJ made her
21 determination and the Court has already addressed this evidence with respect to the ALJ's
22 finding Plaintiff's knee and back pain were managed with conservative treatment, *see supra,*
23 subsection A.

24

1     G.  Harmless Error

2     The Court concludes the ALJ erred by rejecting Plaintiff's subjective symptom testimony
3 because it was inconsistent with Plaintiff's decision to delay right knee surgery, unemployment
4 benefits, prior statements and daily activities. However, one or more improper reasons for
5 discounting Plaintiff's testimony does not render the ALJ's decision invalid. *Batson v. Comm'r*
6 *Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (striking down one or more justifications
7 for discrediting a claimant's testimony amounted to a harmless error where the ALJ presented
8 other reasons for discrediting the testimony which was supported by substantial evidence in the
9 record); *Carmickle*, 533 F.3d at 1163. As discussed above in subsections A and B, the ALJ gave
10 three valid reasons for rejecting Plaintiff's subjective symptom testimony – Plaintiff's left knee
11 improved after surgery, Plaintiff's back pain improved with physical therapy, and Plaintiff's
12 work history was inconsistent with the alleged limitations and inconsistent with Plaintiff's
13 testimony, which are supported by substantial evidence. Accordingly, the ALJ's analysis of
14 Plaintiff's subjective symptom testimony is proper.

15     **H.  Whether the ALJ erred in assessing Plaintiff's RFC and finding Plaintiff not disabled at Step 5 of the sequential evaluation process.**

16

17     Plaintiff next contends the ALJ erred in her assessment of Plaintiff's RFC and in her step
18 5 analysis because the ALJ erred in her evaluation of Plaintiff's subjective symptom testimony.
19 Dkt. 10 at 8-12. As the ALJ properly discredited Plaintiff's complaints of disabling impairments
20 and *see supra* Section I, Plaintiff's arguments fail. The RFC assessment and the hypothetical
21 questions were properly based on the credible functional limitations contained in the record, and
22 thus both the RFC assessment and the hypothetical questions posed to the vocational expert were
23 proper. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ's RFC
24 assessment need only to incorporate credible limitations supported by substantial evidence in the

record); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence").

Moreover, although the ALJ noted based on the RFC and considering Plaintiff's age, education and transferable work skills, a finding of "not disabled" would be appropriate under Medical-Vocational Rule 202.07, the ALJ determined there was no need to proceed to step fie since Plaintiff is capable of past relevant work. AR 22. Therefore, Plaintiff's argument fails because the ALJ did not proceed to step five, the step at which the Medical-Vocational Guidelines are at issue. 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

## CONCLUSION

Based on the above stated reasons, the undersigned recommends this matter affirmed pursuant to sentence four of 42 U.S.C. § 405(g). The undersigned also recommends judgment be entered for Defendant and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 24, 2018 as noted in the caption.

Dated this 8th day of August, 2018.

David W. Christel
United States Magistrate Judge